JAMES M. CARLSON (IL Bar No. 6269506)
Email: carlsonja@sec.gov
Telephone: 202-551-3711
JAMES E. SMITH (DC Bar No. 482985)
Email: smithja@sec.gov
Telephone: 202-551-5881
MATTHEW SCARLATO (DC Bar No. 484124)
Email: scarlatom@sec.gov
Telephone: 202-551-3749
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549

Attorneys for Plaintiff
Securities and Exchange Commission

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>CORNERSTONE ACQUISITION AND MANAGEMENT COMPANY LLC, DERREN L. GEIGER, and SHE HWEA NGO,<br><br>Defendants. | Case No. 3:22-cv-00765-JLS-VET<br><br>**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Final Pretrial Conf: March 27, 2025<br>Time: 1:30 pm<br>Courtroom: 4D<br>Judge: Hon. Janis L. Sammartino |

Pursuant to the Court's Order dated January 23, 2025 (ECF No. 77) and Civil Local Rule 16.1(f)(2), Plaintiff, Securities and Exchange Commission ("SEC" or "Plaintiff"), respectfully submits this Memorandum of Contentions of Fact and Law.

## I.    CONTENTIONS OF FACT

### A.    Cornerstone and Its Operations

1.     From about April 2011 through November 2021 (the "Relevant Period"), Defendant Cornerstone Acquisition and Management Company LLC ("Cornerstone") was registered with the SEC as an investment adviser.  Cornerstone provided investment management services to U.S. and non-U.S. private investment funds, and it specialized in U.S.-based oil and natural gas interests and similar securities. Cornerstone's principal office was in Rancho Santa Fe, California.

2.     In 2009, Defendant Derren L. Geiger ("Geiger") became Cornerstone's Chief Operating Officer ("COO"); in 2015, he became Cornerstone's Chief Compliance Officer ("CCO"); and, in 2018, he also became Cornerstone's Chief Executive Officer ("CEO").  Geiger was responsible for, among other things, the day-to-day management of Cornerstone and Caritas Royalties Fund (Bermuda) Ltd. (the "Bermuda Fund").

3.     Defendant She Hwea Ngo ("Ngo"), a certified public accountant ("CPA"), joined Cornerstone in 2014, as its controller.  In 2015, Ngo became the CFO.  As CFO, Ngo was responsible for maintaining the books and records for Cornerstone and its funds.  Ngo also reviewed Cornerstone's Forms ADV before they were filed with the SEC.

4.     As a registered investment adviser, Cornerstone was required to file and periodically update Forms ADV with the SEC.  After a Form ADV is filed with the SEC, it becomes publicly available.

5.     For its services, Cornerstone received a "management fee" of one percent (1%) of assets under management and a "performance-based fee" of twenty percent (20%) of net investment profits.  The salaries, bonuses, and profits paid to

SEC's Contentions of Fact and Law

Geiger and Ngo came from those fees. From 2011 through September 2021, the management fees received by Cornerstone from the Bermuda Fund totaled approximately $3.4 million.

6.      At Cornerstone, Geiger conducted investment adviser activities. Those activities included serving as the Chairman of the Investment Committee, analyzing potential investments, and providing investment advice for compensation. As CCO, Geiger also was responsible for Cornerstone's legal compliance functions, including ensuring its Forms ADV were filed with the SEC and overseeing its compliance policies and procedures. Geiger testified it was "important" for the Forms ADV to be accurate.

7.      During the Relevant Period, Cornerstone advised or sub-advised three private funds: American Assurance 2000, LP ("American Assurance"); the Caritas Royalty Fund LLC (the "U.S. Fund"); and the Bermuda Fund. These private funds were "pooled investment vehicles" under the Investment Advisers Act of 1940 (the "Advisers Act").

8.      The Bermuda Fund was for U.S. tax-exempt and non-U.S. investors. Investors purchased "shares" in the Bermuda Fund, which were offered and sold as securities pursuant to certain exemptions from registration under the Securities Act. Investors in the Bermuda Fund resided in Bermuda and various U.S. states, including Arizona, California, Colorado, Florida, Louisiana, New Jersey, and New York.

9.      Cornerstone invested the Bermuda Fund's money (from investors) by making loans to American Assurance, which invested in oil and gas royalty interests. These loans were memorialized by promissory notes issued by American Assurance to the Bermuda Fund that paid interest and were updated approximately twice per year.

10.      Interest paid on the promissory notes was the Bermuda Fund's only source of income and the only way investors in the Bermuda Fund made money on their investments.

3:22-cv-765-JLS-VET                                    SEC's Contentions of
                                                       Fact and Law

**B.**    **Misrepresentations Regarding Security or Collateral for the Bermuda Fund's Loans**

11.    Defendants made and disseminated multiple statements representing that the promissory notes to the Bermuda Fund were secured by collateral.  First, beginning in April 2011, the promissory notes stated, "This Note is *secured* by that certain *Assignment and Pledge of Ownership Interests* of even date herewith by and among Cornerstone Acquisition Management Company, LLC, as the Pledgor and the Payee [the Bermuda Fund], as the Secured Party."[1]  That statement appeared in seventeen (17) of the promissory notes from April 1, 2011, through January 1, 2013, and again from November 1, 2014, through February 1, 2018.

12.    Geiger signed all of the promissory notes.  Once Ngo joined Cornerstone in 2014, she drafted the notes, although Geiger continued to sign them.  The promissory notes were available for inspection, upon request, by Cornerstone investors.  Both Geiger and Ngo testified that it was "important" for the promissory notes to be accurate.

13.    Second, the Prospectus for the Bermuda Fund, dated April 1, 2011, stated, with respect to the loans memorialized by the promissory notes, that "there will be sufficient *security* for the debt (i.e., the membership interests in the Owner [American Assurance] will be pledged as *collateral* for the [Bermuda] Fund Loans)."  Geiger participated in drafting that prospectus and it was sent to investors.  Geiger and Ngo stated that it was important for the prospectus to be accurate.

14.    Third, the Bermuda Fund's financial statements that Cornerstone provide to investors and potential investors for 2015 through 2018 stated that "the fair value of the [promissory] note receivable is influenced by the current market conditions surrounding the value of the *underlying collateral*."  Ngo prepared these financial

---

[1] Unless otherwise stated, all emphasis in contentions of fact or law herein was added.

statements, Geiger reviewed them, and they were sent to investors.  Geiger and Ngo testified that it was "important" for the audited financial statements to be accurate.

15.     Fourth, on June 9, 2016, in response to a potential investor's questions, Geiger told the potential investor that the promissory notes were "*secured debt*."

16.     Fifth, on June 6, 2018, in response to an investor's questions, Geiger was copied on an email from Henry Cox to the investor, stating that the promissory notes were "*collateralized* by the underlying oil and gas assets."  Cox was the Managing Director and CCO of an entity called Cornerstone Management (Bermuda) Ltd., which advised the Bermuda Fund, along with Cornerstone.

17.     Sixth, in October 2019, in connection with an SEC examination of Cornerstone, the SEC staff requested a "[w]ritten description of the collateral" for the promissory note from American Assurance to the Bermuda Fund.  In response, on November 4, 2019, Geiger sent an email to the SEC, stating that the oil and gas assets held by American Assurance were "the *collateral of the Note*."  Ngo and Geiger worked together on the response that Geiger sent to the SEC.

18.     Seventh, also on November 4, 2019, Ngo sent an email to one of Cornerstone's auditors, forwarding the information provided to the SEC, including the statement that oil and gas assets were "collateral" for the promissory notes.

19.     Contrary to the foregoing representations, the loans from the Bermuda Fund to American Assurance were *unsecured*.  Indeed, Geiger, Ngo, and Cox all testified that the promissory notes were *not* secured by any collateral.  As Geiger testified:

> Q.  But it's been your understanding that the notes have always been unsecured; is that correct?
>
> A.  Yes.

20.     Additionally, the "Assignment and Pledge of Ownership Interests" referenced repeatedly in the promissory notes, was never executed.

3:22-cv-765-JLS-VET                                         SEC's Contentions of
                                                            Fact and Law

### C.    Misrepresentations Regarding the Ownership of Cornerstone

21.    In March 2017, the then-owner of Cornerstone died.  On February 28, 2018, Geiger and Ngo executed a Limited Liability Company Interest Purchase Agreement (the "Purchase Agreement") to purchase Cornerstone from the estate of its prior owner for $525,000.  Under the Purchase Agreement, Geiger and Ngo each became "50%" owners of Cornerstone.

22.    About one week later, on March 8, 2018, Cornerstone filed a Form ADV - Part 2A with the SEC, stating that the company's recent "*material* changes" included "a change of ownership from D. Bruce McMahan (and his estate) to Derren L. Geiger."

23.    The next day, on March 9, 2018, Cornerstone filed a Form ADV Part 1 with the SEC, stating that Geiger owned "75% or more" of Cornerstone and that Ngo owned "less than 5%."  Neither of the Forms ADV filed on March 8 or 9, 2018, disclosed that Ngo owned 50% of Cornerstone.

24.    On April 24, 2018, Ngo sent an email to Cornerstone's fund administrator, copying Geiger, and directing that Cornerstone's Form ADV – Part 2A be distributed to "all current investors."  Geiger later testified that Cornerstone's ownership "would be certainly *material* to somebody's investment choice."

### D.    Cornerstone's Inaccurate Books and Records

25.    As Cornerstone's CFO, Ngo was primarily responsible for maintaining accurate books and records, including Cornerstone's general ledger.  But the general ledger contained several inaccurate entries related to the acquisition of Cornerstone by Geiger and Ngo.

26.    Specifically, the general ledger reflected that (1) on February 28, 2018, Cornerstone loaned each of Geiger and Ngo $262,500 (adding up to the $525,000 purchase price of Cornerstone); (2) on March 8, 2018, Geiger and Ngo each made $90,000 in "Loan Repayment[s]" to Cornerstone; and (3) on June 18, 2018, Geiger and Ngo each made $200,000 in "Loan Repayment[s] and Additional Paid-In

5

SEC's Contentions of Fact and Law

Capital."

27.     Ngo later admitted that the general ledger entries above were incorrect and not accurate.

28.     Additionally, the promissory notes from American Assurance to the Bermuda Fund (described above) were maintained as part of Cornerstone's books and records.

**E.     Cornerstone's Lack of Written Policies and Procedures**

29.     In July 2019, the SEC staff began an examination of Cornerstone.  On February 18, 2020, the SEC staff shared the findings of its examination with Geiger. The staff's findings noted, among other things, that Cornerstone did not have written policies and procedures to address compliance risks related to (i) short-term loans that Cornerstone made to American Assurance; (ii) the determination of interest rates for the promissory notes issued by American Assurance to the Bermuda Fund; and (iii) the determination of principal adjustments for the promissory notes issued by American Assurance to the Bermuda Fund.  That same day, Geiger sent the SEC's findings to Cox and Ngo.

30.     The next day, February 19, 2020, Cox told Geiger and Ngo that "the current Note structure needs to be properly disclosed and procedures set in place that explain how the Notes are determined / negotiated."

31.     About one month later, on March 25, 2020, Geiger informed the SEC that Cornerstone had "adopted and implemented" written policies and procedures for (i) short-term, related-party loans, such as the loans Cornerstone made to American Assurance; (ii) the determination of interest rates for the promissory notes issued by American Assurance to the Bermuda Fund; and (iii) the determination of principal adjustments for the promissory notes issued by American Assurance to the Bermuda Fund.

32.     The Related Party Promissory Note Policy implemented procedures to ensure that information about such loans would be disclosed to investors through a

SEC's Contentions of Fact and Law

timely written notification.  The Note Interest Rate Determination Policy and Note Principal Determination Policy implemented procedures to ensure that the interest rates and principal adjustments for the promissory notes from American Assurance to the Bermuda Fund would be set according to specific, written guidelines.

## II.    CONTENTIONS OF LAW

### A.    Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 [Claims 1 and 2 of Complaint]

1.    "A violation of Section 10(b) and Rule 10b–5 is established if the defendant (1) made a material misrepresentation or omission (2) in connection with the purchase [or] sale [of a] security (3) with scienter (4) in interstate commerce." *SEC v. Wireless Int'l Corp.*, 617 F.3d 1072, 1092 (9th Cir. 2010); *accord SEC v. Boucher*, No. 20-CV-1650 DMS (MSB), 2022 WL 17961486, at *7 (S.D. Cal. Feb. 8, 2022).

2.    The "same elements" required to establish a Section 10(b) and Rule 10b-5 violation also "suffice to establish a violation under [S]ections 17(a)(1)-(3) of the Securities Act," except that Sections 17(a)(2) and (a)(3) of the Securities Act "require only a showing of negligence, not scienter."  *Boucher*, 2022 WL 17961486, at *8 (quoting *SEC v. Zouvas*, No. 3:16-cv-0998-CAB-DHB, 2016 WL 6834028, at *11 (S.D. Cal. Nov. 21, 2016)).

3.    Additionally, Section 17(a)(2) of the Securities Act requires that a defendant obtain money or property by means of a material misrepresentation.  *See* 15 U.S.C. § 77q(a)(2); *Beck*, 2024 WL 1626280, at *10.  Fees paid to an investment advisor may satisfy the money or property requirement.  *See, e.g., SEC v. Tellone Mgmt. Group, Inc.*, No. 8:21-cv-01413-FWS-ADS, 2022 WL 18582314, at *12 (C.D. Cal. Dec. 19, 2022) (defendant received money or property as a "percentage of assets managed" and "advisory fees").

4.    "A statement is material if 'a reasonable investor would have considered it useful or significant.'"  *United States v. Jenkins*, 633 F.3d 788, 802 (9th Cir. 2011).

SEC's Contentions of Fact and Law

In other words, "[a] fact is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision." *SEC v. Capital Cove Bancorp, LLC*, No. 8:15-cv-980-JLS-JCx, 2016 WL 11752892, at *5 (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). The reasonable investor "standard of materiality is an objective one." *Jenkins*, 633 F.3d at 802; *accord SEC v. Premier Holding Corp.*, No. CV 18-00813-CJC-KESx, 2019 WL 8167920, at *4 (C.D. Cal. Dec. 10, 2019).

5. "Misrepresentations as to the use of investor funds are clearly material." *SEC v. Advance Body Imaging LP*, No. SACV 07–1140 DOC (JTLx), 2009 WL 10673586, at *3 (C.D. Cal. Mar. 18, 2009); *accord SEC v. Sun Empire, LLC*, No. SACV 09-399 DOC (RNBx), 2010 WL 11506429, at *10 (C.D. Cal. Sept. 13, 2010) ("It is 'obviously important' to an investor to be accurately informed of the manner in which his funds are used."). Courts have found misstatements that loans were secured – when they were not – to be material. *See, e.g., Loomis*, 969 F. Supp. 2d at 1234 (defendant's "statements that the loans were secured … were material because a reasonable investor would have considered this factor as significant in considering whether to invest"); *SEC v. Small Bus. Capital Corp.*, No.: 5:12-CV-3237 EJD, 2013 WL 4455850, at *7 (N.D. Cal. Aug. 16, 2013) (statements that "all loans made by the Funds would be secured by deeds of trust" were "materially false and misleading" because the loans "were not secured by any real property"); *SEC v. Milanowski*, No. 2:08-CV-00511-KJD-PAL, 2010 WL 11401596, at *11 (D. Nev. Mar. 15, 2010) (representations "that all loans would be secured" were "unquestionably material").

6. For purposes of Exchange Act Section 10(b) and Rule 10b-5, the "in connection with" a securities transaction requirement "is met if the fraud alleged 'somehow touches upon' or has 'some nexus' with 'any securities transaction.'" *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1362 (9th Cir. 1993). This language is "broad and flexible" to "accomplish the statute's purpose of protecting investors." *Id*. Similarly, the "in the offer or sale of any securities" language of Securities Act

3:22-cv-765-JLS-VET

SEC's Contentions of Fact and Law

Section 17(a) is "expansive enough to cover the entire selling process." *United States v. Naftalin*, 441 U.S. 768, 772-73 (1979).

7.    "[T]he scienter element is satisfied by 'knowing or reckless conduct.'" *Boucher*, 2022 WL 17961486, at *7; *accord SEC v. RMR Asset Mgmt. Co.*, 479 F. Supp. 3d 923, 929 (S.D. Cal. 2020). Where a defendant is "aware of the facts" that make a statement misleading, he or she "'cannot ignore the facts and plead ignorance of the risk.'" *SEC v Loomis*, 969 F. Supp. 2d 1226, 1234 (quoting *Platforms Wireless*, 617 F.3d at 1094)). And where a defendant "knew" the true facts, but made or authorized false representations about those facts, such conduct shows recklessness as a matter of law. *See Platforms Wireless*, 617 F.3d at 1095-96.

8.    The interstate commerce element is broad and met by use of any interstate instrumentality, including, among other things, mail, email, and websites. *See Boucher*, 2022 WL 17961486, at *7; *SEC v. Beck*, No. 2:22-cv-00812-FWS-JC, 2024 WL 1626280, at *10 (C.D. Cal. Mar. 26, 2024).

9.    So-called "scheme liability" under the antifraud provisions of the Securities Act and Exchange Act require "(1) a device or scheme to defraud someone; (2) in connection with the purchase or sale of a security; (3) with scienter; and (4) by means of interstate commerce." *SEC v. Sriptech*, No. 20-cv-01864-H-BJC, 2024 WL 5126277, at *7 (S.D. Cal. Dec. 16, 2024). Making and disseminating multiple false statements may constitute a scheme to defraud. *See Lorenzo v. SEC*, 587 U.S. 71, 78 (2019); *see also SEC v. Prakash*, No. 23-cv-03300-BLF, 2024 WL 781037, at *6 (N.D. Cal. Feb. 26, 2024) (rejecting defendant's argument that scheme liability required conduct beyond misstatements).

10.    A company is liable for the actions of its officers and employees committed within the scope of their employment. *See In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 475-76 (9th Cir. 2015); *SEC v. Carter*, No. 8:16-cv-02070-JVS-DFMx, 2023 WL 9197565, at *4 (C.D. Cal. July 14, 2023).

3:22-cv-765-JLS-VET                                SEC's Contentions of Fact and Law

11.    The SEC, "unlike private parties, need not show reliance in its enforcement actions." *Lorenzo*, 587 U.S. at 84; *see also RMR Asset Mgmt. Co.*, 479 F. Supp. 3d at 930 ("the SEC is not required to prove reliance or actual harm to the issuers or investors").

## B.    Section 206(4) of the Advisers Act and Rule 206(4)-8 [Claims 7 and 8 of Complaint]

12.    "Section 206(4) and Rule 206(4)-8 prohibit an investment adviser to a pooled investment vehicle from making an untrue or misleading statement or omission of material fact to investors." *SEC v. Moleski*, No. 2:21-cv-01065-SVW-E, 2021 WL 6752254, at *3 (C.D. Cal. Oct. 21, 2021).  The "facts showing a misleading statement or omission [by an investment adviser to a pooled investment vehicle] for purposes of a Section 10(b) and Rule 10b-5 violation will also support a violation of Section 206(4) and Rule 206(4)-8 given their parallel elements." *Id*. (citing *Rana Research*, 8 F.3d at 1363 n.4).

13.    While the antifraud provisions of the Securities Act and Exchange Act apply to anyone, the Advisers Act imposes on investment advisers an additional fiduciary duty "[1] to exercise the utmost good faith in dealing with clients, [2] to disclose all material facts to their clients, and [3] to employ reasonable care to avoid misleading clients." *SEC v. Sztrom*, 538 F. Supp. 3d 1050, 1056 (S.D. Cal. 2021). Thus, where an investment adviser violates the antifraud provisions of the Securities Act and Exchange Act, that conduct also violates the Advisers Act. *See Moleski*, 2021 WL 6752254, at *3.

14.    An "investment adviser" under the Advisers Act is "any person who, for compensation, engages in the business of advising others … as to the advisability of investing in, purchasing, or selling securities …." 15 U.S.C. § 80b-2(a)(11); *see also* 15 U.S.C. § 80b-2(a)(16) (a "person" means "a natural person or a company").

15.    Aiding and abetting liability requires (1) a primary violation; (2) knowledge of the violation by the aider and abettor; and (3) substantial assistance by

the aider and abettor in commission of the primary violation. *See SEC v. Sztrom*, 538 F. Supp. 3d 1050, 1062 (S.D. Cal. 2021) (citing *Ponce v. SEC*, 345 F.3d 722, 737 (9th Cir. 2003)). The second prong is satisfied where the aider and abettor has actual knowledge or is "reckless in not recognizing" the primary violation. *Ponce*, 345 F.3d at 737. The third prong is satisfied by a showing, among other things, of affirmative acts and communications to aid in the primary violation. *See Sztrom*, 538 F. Supp. 3d at 1062.

### C. Section 207 of the Advisers Act [Claims 9 and 10 of Complaint]

16.    Section 207 of the Advisers Act makes it "unlawful for any person willfully to make any untrue statement of a material fact in any registration application or report filed with the [SEC] under [provisions of the Advisers Act], or willfully to omit to state in any such application or report any material fact which is required to be stated therein." 15 U.S.C. § 80b-7. This provision applies to Forms ADV. *See Vernazza v. SEC*, 327 F.3d 851, 858 (9th Cir. 2003); *Capital Cove*, 2016 WL 11752892, at *6.

17.    Conduct that is knowing or reckless for purposes of scienter under Exchange Act Section 10(b) and Rule 10b-5 also satisfies the willfulness requirement for Advisers Act Section 207. *See Vernazza*, 327 F.3d at 859-60 (where defendants "each had reason to know of the false statements made in the Forms ADV and disclosure statements," that supported scienter for liability under Exchange Act § 10(b) and Rule 10b-5 and Advisers Act § 207).

18.    As noted above, aiding and abetting requires (1) a primary violation; (2) knowledge of the violation by the aider and abettor; and (3) substantial assistance by the aider and abettor in commission of the primary violation. *See Sztrom*, 538 F. Supp. 3d at 1062.

SEC's Contentions of Fact and Law

**D.    Section 204 of the Advisers Act and Rule 204-2 [Claims 3 and 4 of Complaint]**

19.    "Section 204 of the Advisers Acts imposes recordkeeping and reporting requirements on registered investment advisers." *Sztrom*, 538 F. Supp. 3d at 1062. Rule 204-2 thereunder requires a registered investment adviser to "make and keep true, accurate and current … books and records," including, among other things, (i) a general ledger and (ii) all "written agreements … relating to the business of such investment adviser." 17 C.F.R. §§ 275.204-2(a)(2) & (a)(10).

20.    There is no materiality or scienter requirement for a violation of these books and records provisions. *See SEC v. Neman*, No. CV 12-03142-BRO (PLAx), 2016 WL 6661174, at * 6 (C.D. Cal. Jul. 15, 2016); *SEC v. Young*, Civil Action No. 09-1634, 2011 WL 1376045, at *8 (E.D. Pa. Apr. 12, 2011).

21.    As noted above, aiding and abetting requires (1) a primary violation; (2) knowledge of the violation by the aider and abettor; and (3) substantial assistance by the aider and abettor in commission of the primary violation. *See Sztrom*, 538 F. Supp. 3d at 1062.

**E.    Section 206(4) of the Advisers Act and Rule 206(4)-7 [Claims 5 and 6 of Complaint]**

22.    Rule 206(4)-7 requires that an investment adviser must "[a]dopt and implement written policies and procedures reasonably designed to prevent violation" of the Advisers Act and the rules thereunder. 17 C.F.R. § 275.206(4)-7(a). An investment adviser's failure "to have adequate compliance policies and procedures in place" constitutes a violation this rule. *Compliance Programs of Investment Companies and Investment Advisers*, SEC Release No. 2204, 2003 WL 22971048, at *3 (Final Rule Dec. 17, 2003).

23.    "[S]cienter is not required" to violate Section 206(4) or Rule 206(4)-7. *Tellone*, 2022 WL 18582314, at *15. Nor is materiality. *See id.*; *SEC v.*

3:22-cv-765-JLS-VET                                                    SEC's Contentions of Fact and Law

*Commonwealth Equity Servs.*, LLC, No. 1:19-cv-11655-IT, 2023 WL 2838691, at *14-15 (D. Mass. Apr. 7, 2023).[2]

    24.    As noted above, aiding and abetting requires (1) a primary violation; (2) knowledge of the violation by the aider and abettor; and (3) substantial assistance by the aider and abettor in commission of the primary violation. *See Sztrom*, 538 F. Supp. 3d at 1062.

## III.  ABANDONED ISSUES

The SEC has not abandoned any issues alleged in the Complaint.

## IV.  PLAINTIFF'S EXHIBITS

In addition to the following, the SEC incorporates any exhibits identified in Defendants' disclosures and reserves the right to use such exhibits.  The SEC also reserves the right to present demonstrative exhibits not listed herein.

### A.    Exhibits Plaintiff Expects to Offer

| No. | DATE MARKED | DATE ADMITTED | DESCRIPTION |
|---|---|---|---|
| A | | | US Fund Financial Statements and Independent Auditor's Report dated 12/31/18 [Dep. Ex. A] |
| B | | | Prospectus for Bermuda Fund dated January 2015 [Dep. Ex. C] |
| C | | | Caritas Royalties Fund Due Diligence Questionnaire dated 2018 Prospectus for Bermuda Fund dated January 2015 [Dep. Ex. 4 ] |
| D | | | Compilation of Promissory Notes Prospectus for Bermuda Fund dated January 2015 [Dep. Ex. 5] |

---

[2] The Court granted the SEC's Motion for Summary Judgment for its fifth claim for relief, primary violations of Section 206(4) of the Adviser's Act and Rule 206(4)-7 thereunder against Cornerstone.  (ECF No. 77).  The Court denied the SEC's Motion for Summary Judgement for its sixth claim for relief, Geiger's aiding and abetting Cornerstone's violations of Section 206(4) and Rule 206(4)-7 thereunder.

               SEC's Contentions of Fact and Law

| | | | |
|---|---|---|---|
| E | | | Email chain from Geiger to Cox dated 2/8/13 Prospectus for Bermuda Fund dated January 2015 [Dep. Ex. 6] |
| F | | | Rep Letter from Geiger, Ngo, and Cox to Weaver and Tidwell dated 3/23/17 Re Bermuda Fund Prospectus for Bermuda Fund dated January 2015 [Dep. Ex. 7] |
| G | | | Bermuda Fund Financial Statements and Independent Auditor's Report dated 12/31/16 Prospectus for Bermuda Fund dated January 2015 [Dep. Ex. 8] |
| H | | | Rep Letter from Geiger, Ngo, and Cox to Weaver and Tidwell dated 4/20/18 Re Bermuda Fund Prospectus for Bermuda Fund dated January 2015 [Dep. Ex. 9] |
| I | | | Bermuda Fund Financial Statements and Independent Auditor's Report dated 12/31/17 Prospectus for Bermuda Fund dated January 2015 [Dep. Ex. 10] |
| J | | | Rep Letter from Geiger, Ngo, and Cox to Weaver and Tidwell dated 4/10/19 Re Bermuda Fund Prospectus for Bermuda Fund dated January 2015 [Dep. Ex. 11] |
| K | | | Bermuda Fund Financial Statements and Independent Auditor's Report dated 12/31/18 [Dep. Ex. 12] |
| L | | | Email chain from Geiger to Cox dated 6/6/18 [Dep. Ex. 13] |
| M | | | Email chain from Dudukin to Cox dated 6/14/18 [Dep. Ex. 14] |
| N | | | Email chain from Geiger to Gerwert dated 6/9/16 [Dep. Ex. 15] |
| O | | | Email from Cox to Simon dated 1/9/17 [Dep. Ex. 16] |
| P | | | Prospectus for Bermuda Fund dated January 2015 [Dep. Ex. 17] |
| Q | | | Prospectus for Bermuda Fund dated 4/1/11 [Dep. Ex. 18] |

3:22-cv-765-JLS-VET                                SEC's Contentions of Fact and Law

| R | | | Caritas Fund Structure Chart [Dep. Ex. 19] |
| S | | | Rep Letter from Geiger and Ngo to Weaver and Tidwell dated 4/20/18 Re US Fund [Dep. Ex. 20] |
| T | | | Rep Letter from Geiger and Ngo to Weaver and Tidwell dated 4/10/19 Re US Fund [Dep. Ex. 21 ] |
| U | | | 17th to 21st Replacement Promissory Notes from Weaver Work Papers [Dep. Ex. 22] |
| V | | | Audit Program from Weaver Work Papers [Dep. Ex. 23] |
| W | | | Audit Program from Weaver Work Papers [Dep. Ex. 24] |
| X | | | Letter from Bilzin to Geiger dated 7/29/16 from Weaver Work Papers [Dep. Ex. 25] |
| Y | | | Weaver Engagement Letter for Bermuda Fund dated 8/18/17 [Dep. Ex. 26] |
| Z | | | Weaver Engagement Letter for US Fund and American Assurance dated 8/18/17 [Dep. Ex. 27] |
| AA | | | Weaver Engagement Letter for Bermuda Fund dated 9/12/18 [Dep. Ex. 28] |
| AB | | | Weaver Engagement Letter for US Fund and American Assurance dated 9/12/18 [Dep. Ex. 29] |
| AC | | | Rep Letter from Geiger and Ngo to Weaver and Tidwell dated 4/20/18 Re US Fund [Dep. Ex. 30] |
| AD | | | Rep Letter from Geiger and Ngo to Weaver and Tidwell dated 4/10/19 Re US Fund [Dep. Ex. 31] |
| AE | | | Email chain from Truderung to Flax dated 3/21/18 [Dep. Ex. 32] |
| AF | | | Email chain from Ngo to Maranjyan dated 2/20/20 [Dep. Ex. 33] |

3:22-cv-765-JLS-VET

SEC's Contentions of Fact and Law

| | | | |
|---|---|---|---|
| AG | | | US Fund Financial Statements and Independent Auditor's Report dated 12/31/17 [Dep. Ex. 34] |
| AH | | | Bermuda Fund Financial Statements and Independent Auditor's Report dated 12/31/19 [Dep. Ex. 35] |
| AI | | | US Fund Financial Statements and Independent Auditor's Report dated 12/31/19 [Dep. Ex. 36] |
| AJ | | | Email chain from Rajesh to Geiger dated 4/28/20 [Dep. Ex. 37] |
| AK | | | Email chain from Rajesh to Ngo dated 4/29/16 [Dep. Ex. 38] |
| AL | | | Email chain from Ngo to Rajesh dated 4/29/16 [Dep. Ex. 39] |
| AM | | | Email chain from Rajesh to Geiger dated 4/29/16 [Dep. Ex. 40] |
| AN | | | Email chain from Geiger to Schubauer/Fogel dated 3/8/13 [Dep. Ex. 47] |
| AO | | | Email chain from Geiger to Ngo, Vyas dated 3/25/20 [Dep. Ex. 48] |
| AP | | | LLC Interest Purchase Agreement between Securities Analysis Services Inc. and Geiger/Ngo dated 2/28/18 [Dep. Ex. 49] |
| AQ | | | Email Chain from Hayes to Geiger dated 2/26/18 [Dep. Ex. 50] |
| AR | | | Cornerstone Acquisition & Management Company's Form ADV – Uniform Application for Investment Adviser Registration and Report by Exempt Reporting Adviser date 3/9/18 [Dep. Ex. 51] |
| AS | | | Cornerstone Acquisition & Management Company Form ADV – Part 2A (Firm Brochure) dated 3/8/18 [Dep. Ex. 52] |
| AT | | | Letter from SEC to Cornerstone Acquisition & Management Company LLC dated 9/30/21 [Dep. Ex. 53] |

16

3:22-cv-765-JLS-VET

SEC's Contentions of Fact and Law

| | | | |
|---|---|---|---|
| AU | | | Letter from Clifford Chance US LLP to SEC re Cornerstone dated 11/5/21 [Dep. Ex. 54] |
| AV | | | Table of Cornerstone management fees 2011 through 2021 [Dep. Ex. 55] |
| AW | | | Email from Vyas to Geiger/Ngo dated 10/26/19 [Dep. Ex. 56] |
| AX | | | Accellion msg from Geiger to April Pelkie dated 11/4/19 [Dep. Ex. 57] |
| AY | | | Email from david@benzemail.com to Geiger dated 11/4/19 [Dep. Ex. 58] |
| AZ | | | Accellion msg from Geiger to April Pelkie dated 11/4/19 [Dep. Ex. 59] |
| BA | | | Letter from SEC to Geiger dated 2/18/20 [Dep. Ex. 60] |
| BB | | | Email chain from Geiger to Cox dated 2/28/20 [Dep. Ex. 61] |
| BC | | | Caritas Royalties Fund (Bermuda) Ltd. Financial Statements and Independent Auditor's Report dated 12/31/15 [Dep. Ex. 63] |
| BD | | | Caritas Royalties Fund (Bermuda) Ltd. Financial Statements and Independent Auditor's Report dated 12/31/16 [Dep. Ex. 64] |
| BE | | | Email from Geiger to Greg Herman dated 11/9/17 [Dep. Ex. 65] |
| BF | | | Email chain from Ngo to Geiger dated 1/3/18 [Dep. Ex. 66] |
| BG | | | Email chain from Geiger to Diana Hayes dated 2/25/18 [Dep. Ex. 67] |
| BH | | | Email from Ngo to Ryan Rice dated 4/24/18 from [Dep. Ex. 68] |
| BI | | | Cornerstone Acquisition & MGMT Co. LLC General Ledger January – December 2018 [Dep. Ex. 69] |
| BJ | | | Email from Sindhu Rajesh to herself dated 11/18/19 (forwarding Ngo to Rajesh dated 11/4/19) [Dep. Ex. 70] |

3:22-cv-765-JLS-VET                                    SEC's Contentions of Fact and Law

| | | | |
|---|---|---|---|
| BK | | | Email from Vyas to Geiger and Ngo dated 2/18/2020 [Dep. Ex. 71] |
| BL | | | Email chain from Ngo to Geiger dated 4/8/20 [Dep. Ex. 72] |
| BM | | | Email from Rubinger to Geiger dated 3/16/11 [Dep. Ex. 73] |
| BN | | | Email from Geiger to Rubinger/Cox dated 3/17/11 [Dep. Ex. 74] |
| BO | | | Email from Geiger to Rubinger/Ngo dated 7/20/16 [Dep. Ex. 75] |
| BP | | | Email from Rubinger to Geiger dated 7/29/16 [Dep. Ex. 76] |
| BQ | | | Email from Rubinger to Geiger/Ngo dated 6/13/16 [Dep. Ex. 77] |
| BR | | | Email chain involving Geiger, Fogel, Rubinger, Schubauer dated 3/7/13 [Dep. Ex. 78] |
| BS | | | Email chain involving Cagle, Geiger, Schubauer, Fogel dated 3/8/13 [Dep. Ex. 79] |
| BT | | | Email from Geiger to Schubauer/Fogel/Rubinger and Replacement note attachment dated 3/12/13 [Dep. Ex. 80] |
| BU | | | Email from Geiger to Rubinger/Ngo dated 3/16/16 [Dep. Ex. 81] |
| BV | | | Email from Geiger to Ngo/Rubinger dated 7/24/18 [Dep. Ex. 82] |
| BW | | | Email and attachment from Geiger to Rubinger/Ngo dated 3/11/16 [Dep. Ex. 83] |

3:22-cv-765-JLS-VET                    SEC's Contentions of Fact and Law

**B.    Exhibits Plaintiff May Offer If the Need Arises**

| No. | DATE MARKED | DATE ADMITTED | DESCRIPTION |
|---|---|---|---|
| DA | | | Investigative Testimony of Darley dated 11/16/2021, and exhibits attached thereto [Dep. Ex. A] |
| DB | | | Stipulation Re Remote Depositions [Dep. Ex. 1] |
| DC | | | Stipulation Re Foreign Deposition [Dep. Ex. 2] |
| DD | | | Investigative Testimony of Henry Cox dated 1/12/2022, and exhibits attached thereto [Dep. Ex. 3] |
| DE | | | Expert Report of Amy B. Hirsch dated 2/5/24, and exhibits attached thereto [Dep. Ex. 41] |
| DF | | | Expert Report of Amy B. Hirsch dated 2/26/24, and exhibits attached thereto [Dep. Ex. 42] |
| DG | | | Supplemental Expert Report of Amy B. Hirsch dated 3/4/2024, and exhibits attached thereto [Dep. Ex. 43] |
| DH | | | Expert Report of Gerald Fujimoto dated 2/5/24, and exhibits attached thereto [Dep. Ex. 44] |
| DI | | | Transcript of Investigative Testimony of Derren Lee Geiger dated 9/10/21, and exhibits attached thereto [Dep. Ex. 45] |
| DJ | | | Transcript of Investigative Testimony of Derren Lee Geiger dated 10/20/21, and exhibits attached thereto [Dep. Ex. 46] |
| DK | | | Defendants' Initial Disclosures, October 24, 2022 |
| DL | | | Defendants' Amended Initial Disclosures, May 9, 2024 |
| DM | | | Defendant Derren L. Geiger's Responses to Plaintiff's First Set of Interrogatories, August 8, 2023 |

| | | | |
|---|---|---|---|
| DN | | | Investigative Testimony of She Hwea Ngo, dated 09/14 /21, and exhibits attached thereto [Dep. Ex. 62] |
| DO | | | Defendants Responses to Plaintiff's First Request for Production of Documents, August 8, 2023 |
| DP | | | Rebuttal Expert Report of Gerald Fujimoto dated 3/4/2024, and exhibits attached thereto |
| DQ | | | Investigative Testimony of Rajesh Sindhu, dated 11/30 /21, and exhibits attached thereto |

## V. PLAINTIFF'S WITNESSES

### A. Witnesses Plaintiff Expects to Call

| | Name and Contact Information | Subjects |
|---|---|---|
| 1. | Henry Cox<br>2-C 21 Ferris Lane, Pembroke<br>Or<br>C/O Caritas Royalties Fund (Bermuda) Ltd Cumberland House, 5th floor, 1 Victoria Street, Hamilton, HM 11<br>hcox@cornerstonebm.bm<br>+1-441-292-9718 | Information concerning Defendants' communications with prospective and existing investors, Cornerstone Bermuda, and the directors of the Bermuda Fund |
| 2. | SEC Division of Exams Examiner Nicholas Mead<br>444 South Flower Street, Suite 900<br>Los Angeles, CA 90071<br>Phone: 323-965-3998<br>losangeles@sec.gov | Information concerning Defendants' communications with SEC Examinations staff. |
| 3. | Rajesh Sindu<br><br>Weaver and Tidwell, LLP<br>c/o Toby M. Galloway, Esq.<br>Winstead PC<br>300 Throckmorton, Suite 1700<br>Fort Worth, Texas 76102<br>817-420-8262<br>tgalloway@winstead.com | Information concerning Defendants' communications with its auditors and SEC examinations staff; information concerning Cornerstone's SEC filings; information concerning Cornerstone's books and records |
| 4. | Derren Lee Geiger<br>c/o Rita M. Haeusler | Information concerning statements made by Defendants to prospective and |

SEC's Contentions of Fact and Law

| | | |
|---|---|---|
| | Hughes Hubbard & Reed LLP<br>1999 Avenue of the Stars, 9th Floor<br>Los Angeles, CA 90067<br>213-613-2896<br>rita.haeusler@hugheshubbard.com | existing investors, SEC Examinations staff, and auditors; information concerning Cornerstone's ownership structure; information concerning Cornerstone's SEC filings; information concerning Cornerstone's compliance policies and procedures and books and records |
| 5. | She Hwea Ngo<br>c/o Rita M. Haeusler<br>Hughes Hubbard & Reed LLP<br>1999 Avenue of the Stars, 9th Floor<br>Los Angeles, CA 90067<br>213-613-2896<br>rita.haeusler@hugheshubbard.com | Information concerning statements made by Defendants to prospective and existing investors, SEC Examinations staff, and auditors; information concerning Cornerstone's ownership structure; information concerning Cornerstone's SEC filings; information concerning Cornerstone's compliance policies and procedures and books and records |
| 6 | Gerald Fujimoto<br><br>Contact via SEC counsel | Expert testimony regarding importance of Cornerstone statements to investors and nature of Cornerstone debt investments |

**B.    Witnesses Plaintiff May Call if the Need Arises**

In addition to the following, the SEC incorporates any witnesses identified in Defendants' disclosures and reserves the right to call such witnesses.

| | Name and Contact Information | Subjects |
|---|---|---|
| 1. | Jeffrey Rubinger<br><br>Contact via defense counsel | Information concerning Cornerstone's investment structure and a tax opinion letter provided to investors |
| 2. | Darlene Darley<br>Weaver and Tidwell, LLP<br>c/o Toby M. Galloway, Esq.<br>Winstead PC<br>300 Throckmorton, Suite 1700<br>Fort Worth, Texas 76102<br>817-420-8262<br>tgalloway@winstead.com | Information concerning Defendants' communications with its auditors and SEC examinations staff; information concerning Cornerstone's SEC filings; information concerning Cornerstone's books and records |

3:22-cv-765-JLS-VET    SEC's Contentions of Fact and Law

1
2
3
4
### C.     Witnesses Whose Testimony Will Be Presented by Deposition

5       At this time, the SEC expects to present the testimony of the individual listed

6  below by deposition.  The SEC reserves the right to present the testimony of other

7  individuals listed in these disclosures by deposition should the need arise.

8

| | Name and Contact Information | Subjects |
|---|---|---|
| 1. | Henry Cox<br>2-C 21 Ferris Lane, Pembroke<br>Or<br>C/O Caritas Royalties Fund<br>(Bermuda) Ltd Cumberland<br>House, 5th floor, 1 Victoria Street,<br>Hamilton, HM 11<br>hcox@cornerstonebm.bm<br>+1-441-292-9718 | Information concerning Defendants' communications with prospective and existing investors, Cornerstone Bermuda, and the directors of the Bermuda Fund |

Dated:  February 20, 2025                    Respectfully submitted,

*/s/ James E. Smith*
JAMES E. SMITH
JAMES M. CARLSON
MATTHEW F. SCARLATO

*Counsel for the SEC*

3:22-cv-765-JLS-VET                                      SEC's Contentions of
                                                         Fact and Law